Commonwealth *v.* Gabelli, Appellant.

Argued November 17, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*A. C. Scales,* with him *Scales & Shaw,* for appellants.

*Joseph M. Loughran,* Assistant District Attorney, with him *L. Alexander Sculco,* District Attorney, and *John K. Best,* Assistant District Attorney, for appellee.

OPINION BY ROSS, J., March 24, 1955:

Appellants Louis Gabelli and Wilbert Smeltzer, with George Vokoder and Harold L. Willingham, were indicted in the Court of Quarter Sessions of Westmoreland County on counts of larceny and receiving stolen goods. Vokoder and Willingham entered pleas of guilty. Appellants pleaded not guilty and after trial, on May 21, 1954, the jury found them guilty as charged. From the refusal of the court en banc of their motions in arrest of judgment and for a new trial they appealed to this Court.

The larceny, which occurred on the night of December 21, 1953, was of a new GMC one-ton, pickup truck belonging to John A. Tylavsky, a truck and coach dealer in Greensburg.

At the trial Vokoder and Willingham were witnesses for the Commonwealth. Vokoder testified that in response to a telephone call at his home to the effect that Gabelli wanted to see him, he went outside and waited until Gabelli drove up in his automobile with Smeltzer and Willingham as passengers. Vokoder then entered the car and Gabelli informed him that they were on their way to Greensburg to steal a truck. Questioned as to whether Smeltzer heard the conversation relative to stealing a truck, he answered, "I guess so." Through subsequent questioning it was developed that Smeltzer was seated beside the driver

Gabelli, while Vokoder and Willingham shared the rear seat. Upon arrival in Greensburg, at about 8:30 or 9 p.m., according to Vokoder, Smeltzer left the group to go to a restaurant while the others proceeded to the lot adjoining the General Motors building, where Gabelli selected the pickup truck, directed him (Vokoder) and Willingham to get in, turned over the keys and directed Willingham (with Vokoder at his side) to drive to Blacklick, Indiana County, where he informed them someone would purchase the truck. Gabelli in the meantime picked up Smeltzer at the restaurant and the two followed the truck in Gabelli's car. When the gasoline supply in the truck became exhausted, Gabelli stopped the car and, leaving the truck unattended, the four men went to a nearby service station. Resuming, they arrived in Blacklick at approximately 11 or 11:30 p.m., and Gabelli and Smeltzer took the truck to the home of a man the witness knew only as "The Big Boss" (later identified as Charles Bernini). A half hour later Gabelli and Smeltzer returned, Vokoder at Gabelli's direction drove the car, following Gabelli and Smeltzer in the truck, until they came to an old coal shaft, where Gabelli parked the truck and he and Smeltzer came over to the car. Gabelli then gave Willingham and Vokoder $50 apiece and left the truck parked in the coal shaft. Sometime during the episode of running out of gas, Smeltzer confided to the witness and Willingham that he "didn't want to have no part" of Gabelli. However, this was after the larceny had taken place. Smeltzer, nevertheless, accompanied the others. The witness stated that he arrived home about 1 or 1:30 a.m.

Willingham in many respects corroborated Vokoder's testimony. He testified that Gabelli came to Smeltzer's home, where the witness was repairing his

(own) car, and asked him whether he "wanted to make a fast $50.00" by driving or delivering a truck for him. Willingham agreed and he and Smeltzer accompanied Gabelli to Renton, where Gabelli offered another boy a "fast $50.00", which the boy refused. Gabelli then picked up Vokoder. Half way between Vokoder's house and Greensburg, Gabelli told the men that they were going to steal "not one truck, but two trucks, a big one and a small one". The plan was to have Vokoder and Willingham drive them. However, the witness did not know how to "jump" a truck by manipulating wires, so the proposed larceny of the second truck was abandoned. Willingham corroborated Vokoder's testimony relative to Smeltzer's having gone to a restaurant to get coffee, the details of the theft of the truck and the payment of $50 each to him and Vokoder.

Charles Bernini testified that on December 24, 1953 Gabelli offered to sell him a three-quarter-ton GMC pickup truck which the latter had parked in the "strip cut" about two miles from Blacklick, near Bernini's mines; that he later saw the truck there and because he feared it might be dismantled requested its removal; that it was removed but later returned; that he moved it to his brick yard where the State Police subsequently located it, and that at the time of trial a charge of receiving stolen goods was pending against him in the courts of Indiana County.

Gabelli, taking the stand in his own defense, testified that on the evening in question he drove over to Smeltzer's home to have the latter repair his car. Willingham was there and offered to pay his gasoline if he would take him to Greensburg; that he (Gabelli) invited others who were present at the Smeltzer home to accompany them; that he "coaxed" Smeltzer to accompany him; that they picked up Vokoder and upon arrival in Greensburg he and Smeltzer stopped in a

restaurant for coffee, after which the two of them returned home, leaving the other two men in Greensburg. He denied any knowledge of or participation in the larceny of the truck, payment of $100 to the other two men or the sale of the truck to Bernini. Corroborated by his wife, he testified that he had spent December 24th shopping in McKeesport.

Smeltzer, who also took the witness stand on his own behalf, denied participation in the larceny but admitted going on the trip to Greensburg at Gabelli's request after Willingham, unbeknown at the time to the witness, had asked Gabelli to drive him there; that he did so as a favor to Gabelli to "keep him company" on the return trip; that after that they picked up Vokoder; that in Greensburg he and Gabelli went to a restaurant while the other two men went elsewhere, and that they returned to their homes without again seeing their two companions that night. He testified that Willingham had worked for him and had stayed at his home intermittently since 1946. He sat in the front seat but denied hearing any conversation about stealing a truck, or that he ever saw the truck. He did not recall where Blacklick is, and all he knew was that he drove along to Greensburg and came home.

Appellants in many particulars were corroborated by their wives.

Appellant Smeltzer contends that the Commonwealth failed to sustain its burden of proving him guilty beyond a reasonable doubt in that his presence in the car with the men who committed the larceny is circumstantial evidence only and of itself insufficient to indicate his participation in the crime; that he was in a restaurant during the time the crime was being committed and that to uphold his conviction he must be placed in closer contact with the stolen property. In support of this argument he relies on a statement

from the combined cases of *Com. v. Benz* and *Com. v. Routley*, 318 Pa. 465, 178 A. 390, at page 472.

Recently (April 15, 1954), in *Com. v. Cerzullo*, 175 Pa. Superior Ct. 330, 104 A. 2d 179, we had occasion to review this phase of the law of evidence as it relates to criminal trials in this Commonwealth. Since the principle relied upon by appellants appears verbatim in *Com. v. Byers*, below, we quote at length from the *Cerzullo* case. Speaking through Judge ERVIN, we stated at pages 334-335: "The principal contention of the appellant is that the evidence was not sufficient to sustain the conviction under the circumstantial evidence rule. He states the rule as follows, citing Com. v. Byers, 45 Pa. Superior Ct. 37, as his authority: ' "when a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the .facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence." ' This is not a correct statement of the circumstantial evidence rule as applied in criminal cases in Pennsylvania today. We thought this ghost had been laid low by a great number of recent decisions. Apparently we were mistaken. So that there may be no further misunderstanding we restate the rule as follows: 'The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt—not that they need be absolutely incompatible with his innocence—

and that doubt is for the jury unless the evidence "be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances".' (citing cases)."

It is now well settled that it is not incumbent upon the Commonwealth to prove the utter impossibility of appellant's innocence (*Com. v. O'Keefe*, 175 Pa. Superior Ct. 491, 106 A. 2d 634) or to prove his guilt to a mathematical certainty. *Com. v. Mudd*, 176 Pa. Superior Ct. 250, 107 A. 2d 599.

In our opinion the evidence with respect to Smeltzer was sufficient to submit to the jury. While the uncontradicted testimony of all the witnesses placed him in a restaurant during the time of the actual commission of the larceny, nevertheless he admittedly accompanied the confessed thieves to within several blocks of the scene of the crime; by his own testimony he asked no question relative to their mission in Greensburg nor thought it unusual that they did not return with him and Gabelli. According to the testimony of the accomplices, he was seated next to Gabelli within inescapable hearing range when the latter informed the men on the back seat of the purpose of the trip, he drove with Gabelli in the automobile following the stolen truck, accompanied him to sell the truck, was present when the accomplices were paid $50 each for their part in the commission of the crime and when the group went to the service station to replenish the gasoline supply for the truck, and he returned to his home in the car with them.

Appellants contend that the uncorroborated testimony of two accomplices is insufficient to convict, and in support of this proposition cite *Com. v. McCloskey*, 273 Pa. 456, 117 A. 192 (1922), at page 462, where the following excerpt from *Com. v. Haines*, 257 Pa. 289, 297, 101 A. 641, is quoted: " 'The court should point

out, in a general way, not only the testimony of the accomplice, but wherein it is claimed to be contradicted and corroborated, and the jury should be told that they must closely scrutinize such testimony and accept it with caution.'" The Supreme Court then, in the next paragraph, continued: "Appellant, though not contending that the evidence given by the accomplices may not be made the basis of conviction, yet insists that, in such cases, the jury should be advised not to accept it until corroboration is apparent. Some justification for this thought can be found in the earlier decisions, but *it is now clearly settled no such additional testimony is essential,* though the jury should be cautioned as to the source from which the evidence comes, and have its attention called to any statements in conflict with other proven facts. (citing cases)." (Emphasis supplied.)

In this case the learned trial judge adequately and properly cautioned the jury to scrutinize the testimony of the accomplices who were witnesses for the Commonwealth. Under these instructions their credibility was for the jury, as was that of appellants when they categorically denied their participation in the larceny. A jury can believe all or a part of or none of defendant's statements, confessions or testimony. *Com. v. Homeyer,* 373 Pa. 150, 94 A. 2d 743; *Com. v. Donough,* 377 Pa. 46, 103 A. 2d 694. By the same token they were not bound to accept the attempts of the accomplices to exculpate appellant Smeltzer. See *Com. v. Cerzullo,* supra, 175 Pa. Superior Ct. 330, 104 A. 2d 179. In Pennsylvania the law is clear that when proof depends upon oral, though uncontradicted, testimony, the credibility of the witnesses is for the jury and it is the province solely of that tribunal to decide the issue. *Com. ex rel. Kitchen v. Burke,* 175 Pa. Superior Ct. 597, 107 A. 2d 193; *Com. v. Torquato,* 176 Pa. Su-

perior Ct. 138, 107 A. 2d 147; *Com. v. Burdell,* 176 Pa.
Superior Ct. 219, 107 A. 2d 739.

The same principles apply with respect to appellant Gabelli. His version of the events of the evening in question placed him in the role of the friend who drove the accomplices to Greensburg and who asked no questions as to their motive in going there or their reasons for not returning with him. He testified to having been with Smeltzer (whom he had persuaded to accompany him in order that he would have company on his way home) at the restaurant during the time the truck was being stolen. Willingham and Vokoder, on the other hand, pictured him as the moving figure in the original conspiracy, the disposer of the stolen vehicle, the man who fulfilled his promise to them to let them "make a fast $50.00". The jury again was the arbiter of this irreconcilable testimony.

The granting or refusing of a new trial is largely within the discretion of the trial judge. *Howser v. The Commonwealth,* 51 Pa. 332; *Com. v. Bowles,* 163 Pa. Superior Ct. 123, 60 A. 2d 362; *Com. v. Souder,* 176 Pa. Superior Ct. 523, 108 A. 2d 831. In our opinion the court en banc correctly refused appellants' motions for a new trial.

Judgments of sentence are affirmed; and it is ordered that appellants, if released on bail, appear in the court below at such time as they may be there called and that they be committed by that court until they shall have complied with their sentences or any part of them which had not been served at the time their appeals were made a supersedeas.