418 A.2d 1354

**COMMONWEALTH of Pennsylvania**

v.

**Robert J. HARLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 1979.

Filed Jan. 11, 1980.

Robert B. Mozenter, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN,* JJ.

MONTGOMERY, Judge:

Appellant, Robert J. Harley, was convicted by a jury of murder and related offenses arising from the shooting death of a Philadelphia police officer. Post–trial motions were filed and denied by the lower court, which imposed concurrent prison terms of ten to twenty years for murder in the third degree, five to ten years for aggravated assault, and two and a half to five years for possession of an instrument of crime. This direct appeal followed.

The record shows that on October 20, 1975, the decedent, Officer Artimus Johnson, and his partner, Officer Richard Smith, were detailed to the narcotics unit of the Philadelphia Police Department. Both men were working undercover and had considerable experience as narcotics officers. At approximately 8:00 p. m., Officers Smith and Johnson proceeded to an address in Philadelphia to investigate the sale of illicit drugs at that location. The officers hoped to make a drug purchase in order to acquire sufficient evidence to make an arrest. Accompanied by an informant, the officers accomplished their goal of purchasing a quantity of drugs from the Appellant.

After making the purchase, the two policemen met on a nearby corner and formulated an arrest strategy whereby Officer Smith would return to the address and announce

---

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas, Montgomery County, Pennsylvania, are sitting by designation.

himself first, with Officer Johnson following immediately behind. Upon their return to the address, and after Appellant had opened the door, Officer Smith introduced himself as a police officer, displayed his badge and identification, and placed his weapon against Appellant's stomach. Officer Johnson then stepped onto the porch and after assuming a position directly behind Officer Smith, took out his badge and identification and announced, "Police Officer Johnson. You are under arrest." Officer Smith, who was aware that there were others in the house, took about two or three steps inside when he heard a muffled gunshot. As he turned, he saw Officer Johnson crouched over and pressed against Appellant. Simultaneously, he saw Appellant raise his arm and fire a second shot at him. A brief gun battle ensued in which no one was injured. Officer Johnson died later that night from a wound caused by a single bullet fired at a distance of only three to nine inches.

Following the shooting, Appellant ran out of the house, disposed of his weapon, and remained at large until November 14, 1975, when he surrendered himself in Philadelphia.

Additional facts will be discussed as they become pertinent to the numerous issues raised in this appeal. We will consider each issue individually and in the sequence in which it is presented by Appellant.

### The Admission of the Alleged Murder Weapon into Evidence

■ Appellant contends that the lower court abused its discretion in admitting into evidence a gun which was recovered near the scene of the crime on the night of the incident. Specifically, Appellant argues that the Commonwealth failed to demonstrate that the weapon offered into evidence was employed in the commission of the crime, and that the alleged murder weapon had no probative value because Appellant had acknowledged his involvement in the shootout. At trial, however, Appellant raised no objection to the admission of this evidence. Therefore, the issue has been waived. *Commonwealth v. Reid*, 475 Pa. 54, 379 A.2d 572

(1977); *Commonwealth v. Presbury*, 475 Pa. 48, 379 A.2d 569 (1977); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

### Missing Witness Charge

Appellant contends that the trial court erred in refusing to instruct the jury that it could draw a negative inference from the fact that the Commonwealth failed to call three witnesses: Michael Mason, Richard Johnson and Cosby Jones. We do not agree.

The missing witness rule provides that a negative inference may be drawn from the failure of a party to call a particular witness who was in his control. *Commonwealth v. Gibson*, 245 Pa.Super. 103, 104, 369 A.2d 314, 315 (1976). However, each of the following circumstances represents an exception to that rule:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;
2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;
3. The uncalled witness is equally available to both parties;
4. There is a satisfactory explanation as to why the party failed to call such a witness;
5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,
6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Gray*, 441 Pa. 91, 271 A.2d 486 (1970). Each of these witnesses was equally available to both parties. In addition, both Michael Mason and Richard Johnson were arrested at Appellant's house on the night of the murder. All three were colleagues in the drug distribution

business. Criminal charges were pending against Mason and Johnson as a result of the events on the night of the murder. The possibility of obtaining the unbiased truth from either witness was, therefore, quite small indeed. Mr. Jones' testimony was apparently so unimportant that he was not even mentioned in the Commonwealth's case in chief. In short, we find that none of these witnesses fall within the parameters of the missing witness rule so as to permit the instruction sought by Appellant. The trial court, therefore, properly refused the negative inference instructions.

### Possession of an Instrument of Crime

■ Appellant contends that the trial court erred in denying his demurrer to the charge of possession of an instrument of crime. We find no merit to this contention. A loaded revolver, such as the one used in the murder of Officer Johnson, is an instrument of crime. *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1975), affirmed 478 Pa. 19, 385 A.2d 975 (1978). See also Pa.C.S.A. § 907.

■ The intent to employ the weapon in the furtherance of a criminal objective was clearly established. Appellant shot and killed one police officer and tried to shoot another in his successful attempt to resist arrest. We do not agree with Appellant's spurious contentions that the United States Constitution and the Pennsylvania Crimes Code sanction the possession and use of a weapon under these circumstances.[1]

### Officer Smith's Experience in Prior Shooting Incidents

■ Appellant alleges that the trial court erred in permitting the prosecuting attorney to question Officer Smith, the victim's partner, regarding his involvement in prior incidents when shooting was involved. Officer Smith testified that he had been involved in, and wounded in, two prior shootouts. Appellant contends that this testimony was prej-

---

1. We do not reach the merits of Appellant's contention that the trial court improperly denied his motion for demurrer to the charge of possession of an offensive weapon since the lower court arrested judgment as to this offense.

udicial because it evoked the jury's sympathy for Officer Smith. This is a different theory from that which was asserted at trial by Appellant in objecting to this line of questioning. The record reveals that Appellant objected to Officer Smith's testimony on grounds of relevancy. It has long been the rule in this jurisdiction that if the ground upon which an objection to evidence is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post–trial. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. McNeal,* 456 Pa. 394, 398, 319 A.2d 669, 671 (1971); *Commonwealth v. Raymond,* 412 Pa. 194, 202–203, 194 A.2d 150, 154 (1963). Further, even if this waiver principle were not applicable, we would find that the testimony in issue was properly admitted at trial. Relevant evidence is that evidence which has probative value and worth that significantly advances the inquiry and tends to establish some material fact or tends to make the fact at issue more or less probable. *Commonwealth v. Davenport,* 462 Pa. 543, 342 A.2d 67 (1975); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971). Prior to Officer Smith's testimony, the defense had asserted that Appellant killed the victim in self–defense. The defense had argued that neither Smith nor Johnson identified themselves as police officers at the time of the arrest, and that Appellant reasonably believed that he had to protect himself. The Commonwealth had asserted that Appellant's acts were not justified since he was using deadly force to resist arrest by two persons whom he knew to be policemen. Thus, the issue of whether Smith had properly identified himself as a police officer had become a material issue in the case. His course of conduct in making prior arrests became relevant in order to establish whether it was more or less probable that he acted in a similar manner in making this arrest. Experience was a relevant factor because a less experienced policeman may not have conducted himself in the manner that Officer Smith did in making this arrest. *Commonwealth v. Davenport, supra.* We therefore conclude that Officer Smith's testimony met the established

tests of relevancy and was properly admitted by the trial court.

### Prior Experience of the Deceased Officer

■ Appellant also contends that the trial court improperly allowed Officer Smith to testify that his deceased partner had received the highest award given to a policeman in the line of duty and had been present at the time of another policeman's murder. At trial, the basis advanced by Appellant in support of his objection was that this line of questioning went beyond the scope of cross–examination. However, in his post–verdict motions Appellant sought to have this testimony set aside on the grounds of irrelevance and prejudice. Thus, it is clear that on the basis of his specific objection at trial. Appellant has waived the right to advance additional reasons in support of his objection in post–verdict motions or on appeal. Therefore, this assignment of error has been waived. *Commonwealth v. Stoltzfus, supra; Commonwealth v. McNeal, supra; Commonwealth v. Budd, supra; Commonwealth v. Raymond, supra.* Moreover, we find the claim to be without merit, since the defense sought to depict the deceased victim as a careless police officer. The information concerning his past record was certainly relevant rebuttal evidence.

### Trial Court's Charge on Reasonable Doubt

■ Appellant contends that the trial judge's charge on the concept of reasonable doubt was inadequate and confusing. There is no merit to this contention. The two alleged errors in definitional language, both of which involve partial extracts taken from the trial record, are (1) that a reasonable doubt "is much more serious than a possible doubt"; (2) that a reasonable doubt "must be a doubt arising from the evidence that is substantial". Appellant asserts that these instructions indicated the necessity for the existence of a stronger doubt in the minds of the jurors than the law requires. We agree with the lower court's finding that "both of these claims constitute semantic cavil resulting

from a process of efficacious editing on the part of defense co-counsel".

The reasonable doubt standard is not an absolute one and has always been defined as a doubt arising from the evidence itself. *Commonwealth v. Burns*, 409 Pa. 619, 187 A.2d 552 (1963). It has never required the Commonwealth to prove guilt to a mathematical certainty. *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966); *Commonwealth v. DePetro*, 350 Pa. 567, 39 A.2d 838 (1944); *Commonwealth v. Gabelli*, 177 Pa.Super. 608, 112 A.2d 428 (1955); *Commonwealth v. Mudd*, 176 Pa.Super. 250, 107 A.2d 599 (1954). While the reasonable doubt standard must necessarily be a doubt as would cause a juror to hesitate to act in any important affair in his life [*Commonwealth v. Kluska*, 333 Pa. 65, 3 A.2d 398 (1939)], it has never been demanded that the Commonwealth introduce proof beyond all possible doubt. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973).

With respect to the first assignment of error, we find that the language used, when read in its full context, was clearly an acceptable definition of reasonable doubt as established in our case law. As to the second assignment of error, the full context of the trial court's charge indicates that the challenged language was used by the Judge to impart to the jury the importance of arriving at their decision through an analytical process of weighing all the facts and evidence against the Commonwealth's burden of proving guilt beyond a reasonable doubt. We find that this charge was also consistent with the decisions on reasonable doubt rendered by the courts of this Commonwealth. Appellant's semantical challenge to the trial court's instructions is therefore rejected.[2]

2. See *Commonwealth v. Pearson*, 450 Pa. 467, 303 A.2d 481 (1973), holding that the charge of a trial court on reasonable doubt should be read as a whole or in its entirety.

### Appellant's Interest as a Witness

 In his instructions to the jury, the trial judge charged that the Appellant is the one who is the most specifically concerned with what transpired, and that in weighing Appellant's testimony, the jury should consider the fact that he has a vital interest in the outcome of the trial. He further charged the jurors that they could take Appellant's interest into account, along with other facts bearing on credibility, in making up their minds as to what weight his testimony should be accorded. Appellant alleges that these instructions may have suggested to the jury that Appellant would be the first to have reason to lie because he is the "one who is most specifically concerned with what transpired". We do not agree.

It has long been acceptable practice in Pennsylvania to permit the trial court to instruct the jury as to the importance of an accused's interest in the outcome of a criminal proceeding, and to take this into consideration as a factor bearing on his credibility as a witness. *Commonwealth v. McKwayne*, 221 Pa. 449, 70 A. 809 (1908); *Commonwealth v. Orr*, 138 Pa. 276, 20 A. 866 (1890). On this appeal, Appellant has shown a proclivity for conveniently editing the trial court's instructions to the jury in order to advance a more persuasive argument. However, this Court cannot overlook the following relevant paragraph, from the Court's instructions to the jury:

> "The defendant's testimony should not be disbelieved merely because he is the defendant, and his credibility or believeability is to be evaluated in the same manner as any other witness."

An impartial verdict was further assured by the trial court's instruction to the jurors that if they found the facts and circumstances of the case to be supportive of two interpretations, one pointing to the defendant's guilt and the other to his innocence, then they were bound to resolve the matter in favor of the accused.

In evaluating the challenge to the court's instructions to the jury, the charge must be read as a whole, and it is the

general effect that controls. *Commonwealth v. Lesher*, 473 Pa. 141, 148, 373 A.2d 1088, 1095 (1977); *Commonwealth v. Perkins*, 473 Pa. 116, 131, 373 A.2d 1076, 1091 (1977). We find that viewed as a whole, the instructions of the trial judge imposed no unfair burden on Appellant.

### Second Amendment Right to Bear Arms

■ Appellant alleges that the trial court erred in rejecting a submitted point for charge which in his Brief to this Court, is stated as follows: "Every person has the absolute right of having a weapon in his house. Second Amendment–U.S. Constitution . . . The right of the people to keep and bear Arms, shall not be infringed." This submitted point does not relate to the crimes for which Appellant had been indicted and was being tried. Appellant was not prosecuted for possessing a weapon in his home, but for his use of that weapon to kill one police officer and shoot at a second officer while attempting to resist arrest. In short, we find that the trial judge's refusal to instruct the jury regarding Appellant's right to bear arms under the Second Amendment to the United States Constitution to have been entirely proper.

### Trial Court's Charge on Self–defense

■ Appellant contends that the trial judge neglected to charge the jury that even if they disbelieved Appellant's evidence as to self–defense, they could return a verdict of not guilty if they found that the Commonwealth had not met its burden of proof beyond a reasonable doubt. This contention is patently frivolous. A review of the record reveals that the Court charged the jury as follows with respect to this issue:

> "Further, in the event that you disbelieve the Defendant's evidence respecting the exercise of the right of self–defense, it may possibly be that in weighing and evaluating along the Commonwealth's evidence that you had a reasonable doubt respecting the sufficiency of the Commonwealth's evidence to establish all of the required elements

of the crime with which the Defendant is charged in this case."

Appellant also contends that the trial court should have repeated the instruction or given the instruction at a different time. We find these claims to be patently frivolous, and reject them in their entirety.

### Prosecutorial Misconduct

■ Appellant contends that the Commonwealth was guilty of prosecutorial misconduct. In advancing this contention, Appellant has, once again, conveniently excised isolated remarks from the voluminous record compiled during the course of the two week trial. Even in the event that some of the District Attorney's remarks could be called improper, we cannot find that the language was such as to unavoidably prejudice the jury by forming in their minds a fixed bias or hostility toward the Defendant, so that they could not weigh the evidence and render a true verdict. See *Commonwealth v. Stoltzfus, supra.* Especially in view of the strong evidence supporting the jury's verdict in this case, we cannot conclude that the Appellant was denied a fair trial as a result of prosecutorial misconduct.

### Ineffectiveness of Trial Counsel

■ Finally, Appellant cites three specific instances which, he alleges, reflect the ineffectiveness of his trial counsel. The prevailing standard in this jurisdiction with respect to the effectiveness of counsel provides that counsel's assistance is deemed constitutionally effective where the particular course chosen by counsel has some reasonable basis designed to effectuate his client's best interests. *Commonwealth ex rel. Washington v. Marovey,* 427 Pa. 599, 235 A.2d 349 (1967). We will consider Appellant's claim accordingly.

■ Appellant first contends that trial counsel was ineffective for failing to call Michael Mason and Richard Johnson as defense witnesses. While we are not in a position to probe the mind of trial counsel in seeking to determine his

rationale for not calling these witnesses, we find the tactical reasons for such a decision to be unassailable. We noted earlier that criminal charges were pending against these witnesses at the time of Appellant's trial. Appellant was aware of these charges. It is difficult to imagine how the testimony of these witnesses would have helped exonerate Appellant. Michael Mason, when arrested at the scene of the crime after the shooting, provided police with a description of both Appellant and Richard Johnson and attributed the shooting to one or both of them. According to the testimony at Appellant's trial, Richard Johnson served as the principal operator of the narcotics business in which Appellant was involved. His appearance as a defense witness would have served to emphasize Appellant's role in the illicit trade. Under the circumstances, trial counsel cannot be deemed ineffective for not calling these two witnesses.

Appellant also alleges that trial counsel was ineffective in not objecting to an in–court demonstration conducted on cross–examination. In the course of the demonstration, Appellant was asked to step down from the witness stand and illustrate the position of the vestibule door in relation to the position of the gun which he held on the night of the incident. An examination of the record, however, reveals that trial counsel did register an objection, which was overruled. Thus, we find this claim of ineffectiveness to be totally devoid of merit.[3]

Finally, Appellant alleges his trial attorney was ineffective in failing to request that the court charge the jury on the possibility of finding involuntary manslaughter. This claim is absurd. The Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S. § 2504 provides:

---

**3.** The Appellant also contends that he was prejudiced by the demonstration, and that the court erred in permitting it to take place. We cannot agree. Appellant had already admitted that he held a gun in his hand and had opened the door and fired it. In light of these admissions, the demonstration could not have resulted in prejudice. Moreover, the trial judge cautioned the jurors not to draw any adverse inferences merely because they viewed the Appellant holding a gun.

> A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

There was simply no evidence which could have fit that definition and supported such a charge. Appellant shot and murdered one officer and tried to do the same to a second officer. Under the facts of record, no basis existed upon which a jury could have found him guilty of involuntary manslaughter, a mere misdemeanor of the first degree.[4] The absence of merit in this claim is clear.

In summary, we find no issue among those raised by Appellant which would support a reversal of the judgment and sentence of the lower court.

Affirmed.

---

4. For the same reasons we reject Appellant's related contention that the trial court itself erred in not charging the jury on involuntary manslaughter.