J-A21020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LOUIS NICHOLAS PAHOUNTIS, | |
| Appellant | No. 1555 WDA 2016 |

Appeal from the Order Entered October 5, 2016
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001469-2014

BEFORE: BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 14, 2017**

Appellant, Louis Nicholas Pahountis, appeals from the order entered on October 5, 2016, denying his motion to dismiss the charges filed against him based upon double jeopardy. Upon careful consideration, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Appellant] was charged with two counts of aggravated assault of a child, and one count each of indecent assault of a person less than 13 years of age and endangering the welfare of children[,] arising from allegations that between 2000 and 2003, [Appellant] had on several occasions sexually assaulted the victim, his daughter, C.P., then a minor child between [four] and [six] years old.
>
> The Commonwealth filed the instant charges against [Appellant] on April 7, 2014. [Appellant] had his preliminary hearing on June 17, 2014, and all charges were held for court. [Appellant] waived his formal arraignment, and on August 1, 2014, the Commonwealth filed the criminal information, charging

[Appellant] with the same offenses as were in the criminal complaint.

[Appellant's] jury trial was held from September 15, 2015 through September 17, 2015. After counsel presented their closing arguments and the court delivered its instructions, the jury retired to deliberate. Following approximately four hours of deliberation, the jury asked for clarification on the instructions relating to the charge of endangering the welfare of children. The court reinstructed the jury on that charge, and the jury returned to its deliberations. A short time after returning to its deliberations, the jury delivered a note to the court staff stating that it was unable to reach a decision on any of the charges. The court brought the jury back into the courtroom, and questioned the foreperson on the record as to whether further deliberations would be helpful in reaching a verdict. The jury foreperson answered that no amount of deliberations would aid the jury in reaching a verdict. The court then consulted counsel, and defense counsel stated that the defense "would yield to the court's decision." The court then proceeded to question the foreperson further, and after the foreperson reiterated that no amount of further deliberation would aid the jury in coming to a unanimous decision, the court declared a mistrial and dismissed the jurors.

[After the Commonwealth refiled the original charges, Appellant] then filed [a] motion to dismiss on September 28, 2015, and subsequently filed briefs in support of the motion on February 8, 2016 and July 14, 2016, claiming that the trial court's declaration of a mistrial was improper and that retrying [Appellant] on these charges would violate his constitutional right against "double jeopardy."

Trial Court Opinion, 10/6/2016, at 1-2 (superfluous capitalization omitted).

On October 3, 2016, Appellant filed a motion for a hearing on his motion to dismiss. The trial court held a hearing on October 6, 2016. The trial court denied Appellant relief by order and opinion entered on October 6, 2016. Appellant thereafter filed a timely notice of appeal on October 12, 2016. On December 23, 2016, the trial court issued a second opinion which

also explained that Appellant was not entitled to relief on his motion to dismiss, but also declared for the first time that Appellant's double jeopardy argument was frivolous.

On appeal, Appellant presents the following issues for our review:

I.      Whether the trial court improperly denied [Appellant's] motion to dismiss on double jeopardy grounds where the trial court *sua sponte* granted a mistrial late at night, after only four hours of heavily-interrupted jury deliberation and without considering less drastic alternatives?

II.     Whether this Court should consider the trial court's December 23, 2016 opinion, where the trial court lacked jurisdiction to enter such opinion, and where the interests of justice require this Court to consider the merits of [Appellant's] claim regardless of which opinion controls?

Appellant's Brief at 3 (superfluous capitalization omitted).

We will examine Appellant's second issue first, because it implicates our jurisdiction. Appellant argues that this Court should not consider the trial court's second opinion that was issued on December 23, 2016 because the trial court lacked jurisdiction to enter it. ***Id.*** at 35. Appellant posits that "[a] defendant can immediately appeal as of right from an order denying a non-frivolous motion to dismiss on double jeopardy grounds" but, "if the trial court enters a finding that the defendant's double jeopardy claim is frivolous, the defendant may seek preliminary review of that determination *via* a petition filed under [Pa.R.A.P.] 1573."[1] ***Id.***, *citing* **Commonwealth v. Orie**,

_____

[1] Pennsylvania Rule of Appellate Procedure 1573 provides, "[a]ny party seeking review of a frivolousness determination by a court of common pleas
*(Footnote Continued Next Page)*

33 A.3d 17 (Pa. Super. 2011); Pa.R.Crim.P. 587(B); Pa.R.A.P. 313;

Pa.R.A.P. 1511-1573. In this case, Appellant maintains that the trial court's

"second opinion [declared Appellant's] motion [to dismiss] frivolous and

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

under Pennsylvania Rule of Criminal Procedure 587 shall file a petition for review in the appellate court having jurisdiction over the matter." Pa.R.A.P. 1573(a). The Rule also sets forth the content requirements of a petition for review, the effect of filing the petition, and the effects of granting or denying a petition for review. The note to Pa.R.A.P. 1573 states:

> The trial court's determination and the procedure for determining a motion to dismiss on double jeopardy grounds is set forth in Pa.R.Crim.P. 587. If a trial court denies such a motion without expressly finding that the motion is frivolous, the order is immediately appealable by means of a notice of appeal under Pa.R.A.P. 313. If, however, the trial court finds the motion to be frivolous, appellate review can be secured only if the appellate court grants a petition for review. If the Superior Court does not grant the petition for review, the defendant may file a petition for allowance of appeal with the Supreme Court.
>
> Where the petition for review of the determination of frivolousness is granted, the grant automatically initiates a separate appeal on the merits from the order denying the pretrial motion seeking dismissal of criminal charges on double jeopardy grounds.
>
> A party may seek (or a court may *sua sponte* issue) a stay of the trial court proceedings pending review of the frivolousness determination. Otherwise, the trial court may proceed while the petition for review is pending. **See** Pa.R.A.P. 1701(d). Where the petition for review of the determination of frivolousness is granted, the grant automatically stays further proceedings in the trial courts.

Pa.R.A.P. 1573 note (case citations omitted).

made a belated effort to comply with [the rules of court]." ***Id.*** Appellant

contends that he is entitled to relief for the following reasons:

> First, the [t]rial [c]ourt lacked jurisdiction to file the December 23 opinion, and justice requires that the [t]rial [c]ourt not be given multiple opportunities to comply with the Rules of Criminal Procedure. Second, courts have consistently acknowledged that an explicit frivolous finding is not necessary to secure appellate review. Third, even if this Court does consider the December 23 opinion, the record is sufficient to treat [Appellant's] brief as a petition for review, find that his claims are not frivolous, and consider the merits of his appeal.

***Id.*** at 36.

> Upon our review, the trial court's December 23, 2016 opinion states:

> Although the court did not expressly state that [Appellant's] motion [to dismiss] was frivolous in its original order denying the motion, the court asserts that it is clear by the very nature of [his] claim that it is frivolous.

> \*        \*        \*

> While the trial court also did not specifically state the requirements of Rule of Appellate Procedure 1573 following the denial of [Appellant's] motion [to dismiss], including informing [Appellant] of his appellate rights, [Appellant] immediately appealed the court's decision, and the court asserts that based on the frivolous nature of [Appellant's] original motion, that [Appellant] is not entitled to direct review, and asserts that he should be required to file a petition for review to the Superior Court complying with the requirements of Pa.R.A.P. [] 1573.

Trial Court Opinion, 12/23/2017, at 4.

Initially we note that the trial court did not follow the rules of court, or

explain them to Appellant, and then left Appellant in a situation of guessing

which appellate procedure to follow. We caution the trial court to comply

with the procedural rules to ensure that litigants may properly perfect their

appeals. We agree with Appellant that the trial court's December 23, 2016 opinion was filed after the notice of appeal divested the trial court of jurisdiction. "[A]fter an appeal is taken or review of a quasi[-]judicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701. "The effect of this provision is that once a party has properly appealed a decision of the trial court, the trial court lacks jurisdiction to act further on the case." **Commonwealth v. Moore**, 715 A.2d 448, 453 (Pa. Super. 1998). Thus, we will not consider the December 23, 2016 opinion.

Furthermore, this Court's decision in **Moore** is instructive herein:

[T]he Supreme Court of Pennsylvania held that an order denying a motion to dismiss on double jeopardy grounds is immediately appealable, and thus will stay the proceedings in the trial court, unless, "the hearing court has considered the motion and *made written findings that the motion is frivolous*." [**Commonwealth v. Brady**, 508 A.2d 286, 341 (Pa. 1986).] **See also Commonwealth v. Breeland**, 664 A.2d 1355, n.1 (Pa. Super. 1995)(noting that orders denying claims seeking to dismiss on double jeopardy grounds are immediately appealable, but such appeals will be quashed after the hearing court has made a written finding that the appeal is frivolous).

\* \* \*

Contrary to the Commonwealth's suggestion, the requirement of such a finding is not a mere formality. It is a "specific procedure, designed to balance the double jeopardy rights of a criminal defendant with the significant interest of the public in securing prompt trials for the criminally accused." **Commonwealth v. Gains**, 556 A.2d 870, 874 (Pa. Super. 1984)(*en banc*)(holding that where the trial court made no written finding that appellant's double jeopardy claim was frivolous, this Court would exercise its jurisdiction over the appeal without remanding to

afford the trial court an opportunity to determine whether such a finding should be made on the record).

**Moore**, 715 A.2d at 453 (emphasis in original). "In the absence of an 'express determination' by the trial court that an appeal based on double jeopardy grounds is clearly and obviously without merit, the order denying such relief is appealable." **Id.**

Having determined that we will not consider the trial court's December 23, 2016 opinion, we are left with no express, written determination by the trial court that Appellant's motion to dismiss was frivolous. Thus, for the same reasons this Court stated in **Moore**, we conclude that the order denying Appellant relief herein was immediately appealable and that we have jurisdiction to entertain his claim. Thus, we now turn to the merits of Appellant's first issue.

In his first issue presented, Appellant argues that "[t]he trial court erred when it *sua sponte* declared a mistrial after jurors had deliberated for fewer than four hours, late into the evening, and without utilizing less drastic methods for obtaining a verdict." Appellant's Brief at 14. Appellant maintains that manifest necessity (as required when the trial court declares a mistrial *sua sponte*) did not exist, in light of the complexity of the case, the time of day [when deliberations were terminated], and the [trial court's] actions immediately before [t]he declared mistrial." **Id.** at 18. Appellant claims that actual deliberations were potentially cut short by all of the interruptions and that the long day on the last day of trial and immediate start of deliberations "well after normal working hours" left jurors fatigued

"to the point where they were unable to properly exercise their duties." *Id.* at 22-23. Appellant further contends there were less drastic alternatives to declaring a mistrial, "including giving a deadlocked jury instruction, allowing the jurors to start fresh in the morning, individually polling the jurors about the extent of the deadlock, or engaging in a thorough analysis of the facts." *Id.* at 24. Appellant claims that after jeopardy attached, the trial court failed to find a manifest necessity and that Appellant did not consent when the trial court declared a mistrial. *Id.* at 14. According to Appellant, "the [t]rial [c]ourt never indicated that it intended to declare a mistrial, and as such never solicited the parties' opinions about doing so." *Id.* at 29. Appellant argues that when he said he would yield to the trial court's decision on how to handle the deadlocked jury, the parties had only contemplated giving a deadlocked jury charge and ordering further deliberations. *Id.* at 34. Appellant also takes issue with the trial court's subsequent "attempt[] to blame [Appellant] for failing to object to the court's *sua sponte* decision" to declare a mistrial. *Id.* at 31. In sum, Appellant alleges, "the [t]rial [c]ourt acted in a hasty manner that resulted in reversible error" and, therefore, "all charges against [Appellant] should be dismissed." *Id.* at 35.

Our standard of review regarding a mistrial is as follows:

[The declaration of] a mistrial is within the discretion of the trial court.

\*　　　　\*　　　　\*

On appeal, our standard of review is whether the trial court abused that discretion.

\* \* \*

When the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, it was charged with the duty imposed on the court below; it is necessary to go further and show an abuse of discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623–624 (Pa. Super. 2003)

(internal citations, quotations, and brackets omitted).

Regarding double jeopardy,

The Fifth Amendment to the United States Constitution and Article I, § 10 of the Pennsylvania Constitution provide that no person shall, for the same offense, be twice put in jeopardy of life or limb. The constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.

The Double Jeopardy Clause protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction and multiple punishments for the same offense. However, the constitutional prohibition against double jeopardy does not apply unless jeopardy attaches. In Pennsylvania, jeopardy attaches when a defendant stands before a tribunal where guilt or innocence will be determined. In a criminal jury trial, this occurs when the jury is sworn.

- 9 -

Although jeopardy attaches, and the constitutional protection against double jeopardy applies when a jury is sworn, our courts have held that the protection against double jeopardy does not apply when the trial court grants a proper mistrial upon motion of defense counsel, or by manifest necessity. This rule has been codified in Pa.R.Crim.P. 605, which provides, in relevant part:

**Rule 605. Mistrial**

\*       \*       \*

(B) When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, **the trial judge may declare a mistrial only for reasons of manifest necessity.**

Pa.R.Crim.P. 605 (emphasis added).

The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. A failure of the lower court to consider less drastic alternatives before declaring a mistrial creates doubt about the exercise of the court's discretion and may bar re-prosecution because of double jeopardy.

\*       \*       \*

Mere silence by a defendant or lack of specific objection does not amount to a waiver of the defendant's constitutional protection from double jeopardy.

\*       \*       \*

There is no established test for determining the existence of a manifest necessity. It is, however, recognized that a genuine inability of a jury to agree constitutes a manifest necessity to declare a mistrial over a defendant's objection without offending the defendant's Fifth Amendment rights. A genuine inability of a jury to agree upon a verdict occurs if it appears to the trial court that there is no reasonable probability of agreement.

*Commonwealth v. Young*, 35 A.3d 54, 58–60 (Pa. Super. 2011) (internal case citations, quotations, footnote, and some emphasis in the original omitted). We have previously determined that "the primary element in judging whether a jury is really deadlocked is the firmness of its communication to the court that it is deadlocked and the judge's belief that such is the case." *Commonwealth v. Hoover*, 460 A.2d 814, 816 (Pa. Super. 1983) (citation omitted).

Our Supreme Court has stated that "the use of supplemental charges to the jury has long been sanctioned." *Commonwealth v. Greer*, 951 A.2d 346, 355 (Pa. 2008). Our Supreme Court "in [*Commonwealth v. Spencer*, 275 A.2d 299 (Pa. 1971)] recognized that deadlocked juries are a matter of concern to both the bench and bar[, but also] emphasized that a conviction [could be coerced] by the court's [supplemental deadlock] charge." *Id.* (original citation, brackets, and quotations omitted). "In [] *Spencer*, [] our Supreme Court addressed judicial interaction with deadlocked juries [] and cited with approval the American Bar Association ("ABA") guidelines governing jury deadlock." *Commonwealth v. Marion*, 981 A.2d 230, 235, (Pa. Super. 2009). The ABA guidelines provide:

LENGTH OF DELIBERATIONS; DEADLOCKED JURY

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

- 11 -

(1) that in order to return a verdict, each juror must agree thereto;

(2) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(3) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(4) that in the course of deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and

(5) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

*Id.* at 235-236 (emphasis omitted), *citing* ABA Standards for Criminal Justice 15–5.4.

The parties have not cited, and we have not independently discovered, case law requiring a trial court to issue a supplemental jury charge on deadlocked juries as a prerequisite to declaring a mistrial on grounds that there is no reasonable probability of agreement. In fact, the language in the ABA guidelines plainly state that the trial court "**may**" give a deadlock instruction "[b]efore the jury retires." *Id.* (emphasis added). Thereafter,

- 12 -

"[i]f it appears to the court that the jury has been unable to agree, the court **may** require the jury to continue their deliberations and **may** give or repeat an instruction[.]" *Id.* (emphasis added).

Upon review of the record, we discern no error or abuse of discretion in granting a mistrial based upon the deadlocked jury and, thus, there was no infringement upon Appellant's constitutional double jeopardy rights. The record reveals that at 5:30 p.m., on the last day of trial, the trial court sent the jury out for deliberations. N.T., 1/25/2016, at 466. However, prior to deliberations, the trial court gave its general charge to the jury which included the five factors as set forth in the deadlocked jury instruction. In particular, the trial court stated:

> Your verdict must be unanimous. That means, in order to return a verdict, each of you must agree. You have the duty to consult with each other and deliberate with a view toward reaching an agreement, if it can be done without doing any violence to your independent judgment. Each of you must decide the case for yourself, but only after there has been impartial consideration with your fellow jurors.
>
> In the course of your deliberations, each of you should not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous. However, no juror should surrender an honest conviction as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Id.* at 463-464. Accordingly, the trial court had already properly instructed the jury on how to handle a deadlock. *See Marion*, 981 A.2d at 235, *citing* ABA Standards for Criminal Justice 15–5.4(a)(1-5). The jury was instructed on dealing with deadlock and the jury is presumed to follow the court's

- 13 -

instructions. *See Commonwealth v. Scott*, 146 A.3d 775, 780 (Pa. Super. 2016) (citation omitted) ("Juries are presumed to follow the trial court's instructions.")

Moreover, in other contexts, this Court has not hesitated to find that the timing of a jury instruction is immaterial if the trial court gave the content of the instruction to the jury at some point during trial. *See Commonwealth v. Harley*, 418 A.2d 1354, 1360 (Pa. Super. 1980) (in prosecution for homicide and related offenses, court properly charged jury with respect to right of self–defense and there was no need for trial court to repeat instruction or give instruction at a different time); *see also Commonwealth v. Enders*, 595 A.2d 600, 605 (Pa. Super. 1991) (trial court's failure to give cautionary instructions at time of introduction of codefendant's inculpatory statement, which implicated all defendants, was not abuse of discretion, where trial court gave general cautionary instruction to jury during testimony of victim and gave two instructions at close of all evidence with respect to limitations of use of defendant's inculpatory statement); *see also Commonwealth v. Covil*, 378 A.2d 841, 846 (Pa. 1977) (limiting instruction may be given either as evidence is admitted or as part of the general charge). Hence, we reject Appellant's claim that the jury was not properly instructed.

Turning back to the facts of this case, at 6:55 p.m., after deliberating for one hour and twenty-five minutes, the jury asked for clarification about the endangering the welfare of a child charge, specifically asking whether

they were only to consider the charge in the context of alleged sexual contact or if they could consider other trial testimony of physical contact with the child victim. N.T., 1/25/2016, at 469. At 9:20 p.m., the jurors returned to the courtroom where the trial court told them that the endangering the welfare of a child charge "ar[o]se out of the context of the sexual assault" but reminded them that they were the sole judge of the facts and had to decide what evidence to consider. *Id.* at 472. The jury was excused to continue deliberations at 9:22 p.m. *Id.* at 473. At 9:30 p.m., the trial court received a note from the jury stating, "we cannot reach a unanimous decision on any of the three charges [and] we do not see a likelihood of reaching a unanimous decision given the time for further deliberations." *Id.* at 474. The trial court suggested that it would give the jury "the instruction on a deadlock[ed] jury and ask the foreperson, is there any additional instruction that will help and their reasonable probability of reaching a verdict." *Id.* at 473-474. The trial court then stated that "none of us want to end up with no verdict" and then hesitated, ostensibly contemplating that a mistrial might be warranted. *Id.* at 474.

However, when the jury was brought back into the courtroom at 9:55 p.m., the trial court did not read the deadlocked jury instruction as set forth in the ABA guidelines above. Instead, the following exchange occurred:

| The court: | Good evening, ladies and gentlemen. Good evening, counsel. Ladies and gentlemen, you passed out this note at 9:30 p.m. stating, we cannot reach a unanimous decision on any of the three |
|---|---|

- 15 -

charges. Further, we do not see a likelihood of reaching a unanimous decision given time for further deliberations.

And, I remind you that in order to return a verdict on any charge, you must agree unanimously.

           *          *          *

Mr. Foreperson, does the jury think that any additional instructions or clarifying instructions on the law, as it applies to this case, would help?

Foreman: We do not believe so.

The court: In your judgment, is there a reasonable probability of the jury reaching a unanimous verdict tonight or with further deliberations?

Foreman: No, Your Honor.

The court: The jury does understand that it must be unanimous?

Foreman: Correct.

           *          *          *

The court: […D]o you feel further deliberations would be helpful? I don't need you to elaborate on i[t] better [-] it would or wouldn't be?

Foreman: No we do not.

The court: But you are satisfied that you are not going to reach a verdict?

Foreman: That's correct.

| The court: | Regardless of how long you deliberate? |
| --- | --- |
| Foreman: | That's correct. |
| The court: | Thank you, sir. Counsel? |
| [Defense counsel]: | Obviously, your Honor, [w]e would certainly like a verdict, but I would yield to the [c]ourt's direction. We would yield to the [c]ourt's decision. |
| The court: | [Commonwealth?] |
| The Commonwealth: | If the jury is convinced they are not going to reach a verdict – would the jury believe if we start fresh in the morning, fresh and clear-minded, perhaps? |
| The court: | Mr. Foreperson, do you think returning tomorrow would be helpful? |
| Foreman: | I do not believe so. We, specifically, discussed that. |
| The court: | That was discussed among the jurors? |
| Foreman: | It was, yes. |

\* \* \*

| The court: | The [c]ourt then finds that the jury is hopelessly deadlocked and declares a mistrial. |
| --- | --- |

*Id.* at 474-477.

Established law allows the trial court to grant a mistrial when there is a manifest necessity or when it appears to the trial court that there is no reasonable probability of juror agreement. *See Young*, 35 A.3d at 59-60. Here, the jury foreman, in the presence of the other jurors, firmly

- 17 -

communicated to the court that the jury was deadlocked and, after additional questioning by the trial court, the judge believed that to be the case and declared a mistrial. We discern no error or abuse of discretion. *See Hoover*, 460 A.2d at 816; *see also Marion*, 981 A.2d at 236, *citing* ABA Standards for Criminal Justice 15–5.4(c) ("The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."). The jury foreman indicated the jury was deadlocked by written note to the court and then upon the record following additional questioning by the trial judge. The foreman indicated that there was no reasonable probability of unanimous jury agreement even with further deliberations. The trial court agreed and then properly declared a mistrial. We discern no abuse of discretion and there is no merit to Appellant's claim.

For all of the foregoing reasons, we discern no abuse of discretion in granting a mistrial because the jury was deadlocked. Accordingly, there was no abuse of discretion in subsequently denying Appellant's motion to dismiss.

Order affirmed.

Bender, J. joins this memorandum.

Stabile, J. concurs in result.

Judgment Entered.

- 18 -

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017