No. 82–455. JOHN CUNEO, INC. v. NATIONAL LABOR RELATIONS BOARD ET AL. C. A. D. C. Cir. Certiorari denied. 

JUSTICE REHNQUIST, with whom JUSTICE POWELL joins, dissenting.

In affirming the National Labor Relations Board's decision in this case, the Court of Appeals for the District of Columbia Circuit held, *inter alia*, that (1) a bargaining order to the employer was an appropriate remedy; (2) the bargaining order could be retroactively applied from the date the employer first denied recognition of the Union; and (3) because of the employer's actions during the strike, ·what began as an economic strike was converted into an unfair labor practices strike *ab initio*, justifying reinstatement of striking employees irrespective of whether the employer had hired replacements for the strikers. *Road Sprinkler Fitters Local Union No. 669* v. *NLRB*, 220 U. S. App. D. C. 283, 681 F. 2d 11 (1982). In my opinion, all three of these holdings raise serious and important questions which recur with frequency before the NLRB. Because the NLRB and Court of Appeals, in resolving these questions, have charted new courses in areas previously mapped out only by this Court, I would grant certiorari to review these determinations.

Petitioner, located in Chattanooga, Tenn., manufactures and sells fire protection sprinkler systems. On September 15, 1977, representatives of the Road Sprinkler Fitters Local

Union No. 669 presented to the Company president, Bob Splawn, Union authorization cards signed by 11 of the Company's 14 fabrication shop employees. Splawn refused to recognize the Union. On September 21 the 11 employees went on strike; the strike continued until November 14, when 7 of the strikers made unconditional offers to return to work.

The NLRB determined that the Company committed several unfair labor practices throughout this period in violation of §§ 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act, as amended, 61 Stat. 140, 29 U. S. C. §§ 158(a)(1), (3), and (5). While contested below, these findings of fact are not at issue here. First, on two separate days before the strike, Company officials interrogated a senior employee, Gerald Hall, seeking to ascertain the identities of the employees who signed Union authorization cards; at one point Hall was threatened with discharge if he did not cooperate, but soon thereafter Company officials disclaimed a desire to discharge Hall. Second, the Company created the "impression of surveillance" by two actions: prior to the strike, a Company supervisor was directed to find out who had signed the Union authorization cards; and on two separate days early in the strike, Company officials took photographs of picketing strikers. Third, after the strike was terminated, the Company unnecessarily delayed in reinstating striking employers to available positions. Fourth, when the first two striking employees were reinstated in February 1978, Splawn told them not to talk about the Union on the job. Fifth, in February 1978 the Company promulgated a new rule providing that an employee would be discharged if late for work three times; the new rule was discriminatorily applied against the reinstated strikers.

*The Bargaining Order.* In *NLRB* v. *Gissel Packing Co.,* 395 U. S. 575, 614 (1969), this Court held that if "at one point the union had a majority" and the employer has engaged in unfair labor practices "to undermine majority strength and impede the election processes," then the NLRB can consider

issuing a "bargaining order." Such an order requires the employer to negotiate with the union, forgoing the normal election procedures in which the union must demonstrate its majority status. The Court cautioned, however, that this remedy was to be used sparingly, in situations where the NLRB "finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order." *Id.*, at 614–615. The Court emphasized that there are "less extensive unfair labor practices, which, because of their minimal impact on the election machinery, will not sustain a bargaining order." *Id.*, at 615.

The Court of Appeals' application of these principles is debatable in two respects. First, the court determined the seriousness of the Company's unfair labor practices by focusing on the type of practice committed, rather than the extent to which the practices occurred. The Court of Appeals said that "[c]ourt and [b]oard cases often have viewed unfair labor practices similar to the ones in this case—interrogation, threatened discharge, surveillance, discriminatory application of work rules—as conduct which supports the issuance of a bargaining order." 220 U. S. App. D. C., at 295, 681 F. 2d, at 23. Most any "type" of unfair labor practice would rise to the level of misconduct contemplated by *Gissel* if committed with sufficient frequency; but *Gissel* contemplated that the extent of the practices should be given significant weight in determining the seriousness of an unfair labor practice.

Second, the court ruled that "'*Gissel* does not require a finding that no other remedy could suffice, only that the bargaining order better protects employees' expressed union preference.'" 220 U. S. App. D. C., at 296, 681 F. 2d, at 24 (quoting *Amalgamated Clothing Workers* v. *NLRB*, 174 U. S. App. D. C. 20, 24, 527 F. 2d 803, 807 (1975), cert. de-

nied *sub nom. Jimmy-Richard Co.* v. *NLRB,* 426 U. S. 907 (1976)). The Court spoke plainly in *Gissel,* however, emphasizing that in addition to finding that the employees' union preference would be better protected, before a bargaining order is issued it must be determined that "the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight." 395 U. S., at 614.

The so-called *Gissel* bargaining order was never intended to be used routinely. It is a remedy designed for cases where traditional remedies are insufficient. Since in this case the bargaining order has been sanctioned without a finding that the special circumstances required by *Gissel* exist, we should determine whether this newly adopted approach is a proper one.

*Retroactivity of the Bargaining Order.* The NLRB and the Court of Appeals determined not only that the facts of this case supported the issuance of a bargaining order, but also that the order should be retroactive from the first time the Company refused to recognize the Union. Prior to 1975 the NLRB did not issue retroactive bargaining orders. See *Trading Port, Inc.,* 219 N. L. R. B. 298 (1975). In its decision below, the Court of Appeals did not purport to accept a new policy which uses retroactive orders only. Rather, the court said it will approve "the issuance of retroactive bargaining orders where, as here, the union had majority support within the bargaining unit, the employer refused to bargain with the union, and the employer engaged in serious and pervasive unfair labor practices sufficient to justify a bargaining order under *Gissel.*" 220 U. S. App. D. C., at 297, 681 F. 2d, at 25.

While stated as a limited principle, however, under the standard set forth by the Court of Appeals the NLRB will be at liberty to make all bargaining orders retroactive. Before any bargaining order can issue, all three of the so-called requirements for retroactivity need to be present under *Gissel.*

The hurdle which a "retroactive" bargaining order must clear is therefore no higher than the hurdle which must be cleared by *any* bargaining order.

*Reinstatement of the Striking Employees.* It is undisputed that the Company did not commit an unfair labor practice by refusing to recognize the Union in September 1977. The Company was free to require the Union to show its majority status in the bargaining unit by an election. See *Linden Lumber Division* v. *NLRB*, 419 U. S. 301 (1974). In fact, the Court of Appeals affirmed the NLRB's determination that when the strike began on September 21, 1977, it was not in response to unfair labor practices; the employees were not "striking for any reason other than to gain recognition of the Union as their bargaining representative." 220 U. S. App. D. C., at 292, 681 F. 2d, at 20. Therefore, at the inception of their protests, the employees were engaged in an "economic strike" and not an "unfair labor practices" strike.

During an "economic strike," this Court has held that an employer has the right to hire replacements for the striking employees and "he is not bound to discharge those hired to fill the places of strikers, upon the election of the latter to resume their employment, in order to create places for them." *NLRB* v. *MacKay Radio & Telegraph Co.*, 304 U. S. 333, 345–346 (1938). Nevertheless, in this case the Court of Appeals affirmed the NLRB's order requiring the Company to rehire the strikers as of the date they offered to return to work, irrespective of whether any replacements were filling the strikers' positions.

To reach this result, the NLRB and the Court of Appeals relied on *Drug Package Co.*, 228 N. L. R. B. 108 (1977). In that case, the NLRB ruled that "when employees strike for recognition which should have been granted at the time they went on strike and where the employer engaged in contemporaneous widespread illegal conduct designed to frustrate the statutory scheme, and bargaining in particular, the striking

employees are unfair labor practice strikers." *Id.*, at 112 (footnote omitted). As applied in this case, the *Drug Package* rule seems patently contrary to our cases. First, in light of *Linden Lumber Division, supra*, there is no legal reason why recognition of the Union "should have been granted at the time [the employees] went on strike." Second, converting an "economic strike" into an "unfair labor practices" strike *ab initio* because of unfair labor practices committed subsequent to the initiation of the strike diminishes the rights of replacement workers, as well as the rights of employers, which this Court established in *MacKay Radio, supra*.

All three of these issues present important questions which recur with some frequency in labor disputes. I would grant certiorari to review the Court of Appeals' decision on each issue.