496 A.2d 768

**COMMONWEALTH of Pennsylvania**

v.

**Nicholas ROHACH, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1985.

Filed July 5, 1985.

230

Robert B. Truel, Pittsburgh, for appellant.

Eric Woltshock, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, ROWLEY and FEENEY, JJ.*

OPINION OF THE COURT

ROWLEY, Judge:

In this direct appeal from the judgment of sentence imposed following his conviction by a jury of one count of aggravated assault, appellant presents numerous claims of error. Initially, appellant challenges the sufficiency of the evidence to support his conviction. In addition, appellant finds misconduct warranting a new trial in the prosecutor's display of an unrelated weapon at trial, and in certain questions directed to appellant and his witness. Thirdly, appellant assails the admission of evidence of his flight following the crime, presented in rebuttal. Furthermore, appellant characterizes as erroneous the trial judge's refusal to permit (1) use of the victim's hospital records for impeachment purposes, and (2) presentation of photographs of the area surrounding the scene of the crime to the jury during appellant's direct examination. Lastly, appellant contests the instructions given to the jury, as well as the sentence he received.

Because we find error in the trial judge's instructions to the jury, we reverse the judgment of sentence.

* Judge John M. Feeney of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

■ Initially, we address the appellant's challenge to the sufficiency of the evidence.[1]

■ Appellant was charged with violation of § 2702(a)(1) of the Crimes Code, 18 Pa.Cons.Stat. § 101 *et seq.* As such, the Commonwealth had the burden of establishing beyond a reasonable doubt that appellant

> attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life ...

In determining whether the Commonwealth has met this burden, a reviewing court must ascertain whether,

> accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Lovette,* 498 Pa. 665, 669, 450 A.2d 975, 977 (1982), *cert den.,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983).

Viewed in this light, the record here reveals that, at about 3:00 a.m. on March 6, 1983, appellant and three other men knocked on the door of the Phi Gamma Delta fraternity house in the Oakland area of Pittsburgh, where, earlier in the evening, a party had been held. As the party had ended, they were denied admittance and asked to leave. Although they returned to their car, appellant and the other individuals remained sitting on the car, parked across the

---

**1.** The absence of evidence sufficient to sustain his conviction would entitle appellant to discharge. Thus, we address this claim prior to ascertaining whether a new trial is warranted.

In reliance on *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983), the trial judge concluded that appellant's claim of evidentiary insufficiency had been waived. We disagree. Although in *Holmes,* this Court stated that boiler-plate allegations would be inadequate to preserve claims of insufficiency, this rule was given prospective application, effective sixty days from June 10, 1983 or August 9, 1983. In the instant case, however, appellant's post-verdict motions were filed on August 4, 1983.

street and approximately twenty-five feet down the street from the fraternity house, for an estimated fifteen minutes. During this time, they were loud and abusive, and drank beer. After a series of verbal exchanges with members of the fraternity, appellant and his companions drove off. Two of the fraternity brothers, Darren Hartman and Carl Pritchard, followed the vehicle on foot for some distance, in an effort to ascertain the license plate number. The automobile stopped, and appellant and another individual emerged, running toward Hartman and Pritchard. Although Hartman was unarmed, appellant produced a club and struck him, breaking his jaw. Hartman immediately blacked out, and was later discovered to have sustained a broken ankle as well. The other individual approached Pritchard carrying "something shiny" in his hand, which Pritchard believed to be a knife. Turning away, Pritchard was struck from behind.

Apprehended later that same morning, appellant was transported by the police to the fraternity house. Although appellant had removed his brown vest, he was positively identified by a third fraternity member, Gregory Kunkel.

Conceding that he had struck Mr. Hartman, appellant asserted self-defense. Appellant contended, however, that he did not possess a club or a bat, but rather, used merely his fist. In support of this theory, appellant presented the testimony of one of the individuals with him on March 6, 1983, Gary Knafler. In addition, appellant took the stand.

 We find that the Commonwealth produced ample evidence from which the factfinder could have concluded, beyond a reasonable doubt, that appellant perpetrated an aggravated assault upon Darren Hartman. Similarly, the Commonwealth presented sufficient evidence to disprove, beyond a reasonable doubt, appellant's claim of self-defense. *Cf., Commonwealth v. Gillespie*, 290 Pa.Super. 336, 434 A.2d 781 (1981) (Defendant, who struck victim in the head twice with a baseball bat and then kicked him in the head during a fight on a public sidewalk, provoked the confrontation with victim, and had several avenues of re-

treat available and thus used more force than was reasonably necessary to protect himself, could be convicted of voluntary manslaughter, notwithstanding his claim of self-defense.)

We thus direct our attention to the instructions given to the jury in this case.

At the conclusion of his charge to the jury, the trial judge invited suggestions for modifications or additions to the charge. The assistant district attorney then presented three additional points for charge, regarding the relevancy of his questions focusing on the consumption of alcohol or other drugs on the night in question, and the unfavorable inferences that may be drawn from evidence of (1) an accused's flight following the commission of a crime, and (2) the existence of a witness to the offense who was not called to testify on behalf of the accused. The trial court charged the jury accordingly. On appeal, appellant challenges each of these additional points for charge.

■ We may not review, however, the merits of the trial court's decision to charge the jury with respect to appellant's flight, as requested. Governing jury instructions, Pennsylvania Rule of Criminal Procedure 1119 provides, in part,

(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.
Pa.R.Crim.P. 1119(b).

While defense counsel specifically objected to each of the other additional points for charge, no mention was made of the charge on flight. *See* N.T. pp. 246–251. We review, then, solely the remaining aspects of the charge assigned as error.

The "missing witness" charge in the instant case referred to appellant's failure to call three of the four individuals in his company in the early morning hours of March 6, 1983: Dave Rodgers, John Sargent and Maureen Conley. Our review convinces us, however, that this charge was errone-

ously given in the instant case, in that the circumstances here fall within two of the rule's exceptions.

The missing witness rule provides that a negative inference may be drawn from the failure of a party to call a particular witness who was in his control. *Commonwealth v. Harley,* 275 Pa.Super. 407, 418 A.2d 1354 (1980); *Commonwealth v. Gibson,* 245 Pa.Super. 103, 369 A.2d 314 (1976). Numerous exceptions to the rule have been carved out, however, *Commonwealth v. Harley,* 275 Pa.Super. at 413, 418 A.2d at 1357. The inference may not be drawn where:

> There is a satisfactory explanation as to why the party failed to call such a witness; ... The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth.

*Id.* [2]

As mentioned earlier, both Darren Hartman and Carl Pritchard were injured during the fight. As Mr. Pritchard recounted at trial, an individual carrying "something shiny" in his raised hand, which Pritchard believed to be a knife, approached him. Pritchard explicitly stated that appellant was not the individual purportedly wielding the knife. Turning away from the individual, Pritchard was struck with some type of club, and knocked to the ground.

Appellant was charged with assaulting both Hartman and Pritchard. The jury, however, acquitted him of the assault upon Pritchard, apparently concluding that the Commonwealth had not identified appellant as Pritchard's attacker

---

**2.** These individuals were not arrested at the time appellant and Gary Knafler were, and could not be identified by any of the fraternity brothers present during the incident. With no idea of their names or whereabouts, the Commonwealth contends, they were exclusively within appellant's control, for purposes of the missing witness instruction. Assuming without deciding that this was true, we nonetheless conclude that the missing witness instruction was improperly given here.

beyond a reasonable doubt.[3] Nor had any other person been identified as Pritchard's assailant, by the time of trial. Thus, a reasonable possibility exists that the other individual, carrying the "shiny" object, or perhaps a third person, assaulted Pritchard.

Appellant testified at trial that he had telephoned both Dave Rodgers and John Sargent in an effort to get them to testify on his behalf. Each declined, without explanation. As appellant indicated, these men were not friends of his, nor was Maureen Conley; he only vaguely knew them, as friends of Gary Knafler. Given that these three persons were not appellant's friends, they, arguably, felt no sense of loyalty toward him. Moreover, a strong possibility exists that one of the men was Mr. Pritchard's knife-wielding assailant. If subpoenaed, then, these individuals may well have been hostile witnesses, and invoked their constitutional rights against self-incrimination. Thus, although appellant may have been able to subpoena these individuals as defense witnesses, we question the usefulness of such action.

The situation in *Commonwealth v. Harley, supra,* is analogous. Concluding that each of the relevant witnesses was equally available to both parties, this Court noted that they were the accused's colleagues in the drug distribution business. Arrested at the defendant's home on the night of the murder with which the defendant was charged, each of the "missing" witnesses faced criminal charges as a result of his conduct on that evening. The possibility, then, of obtaining the unbiased truth from either witness was minimal.

Although *Harley* is distinguishable from the instant case, in that the existence of pending charges against the prospective witnesses in *Harley* served to explain their absence at trial, we do not view this factor as dispositive. The *Harley* court focused on the potential for obtaining the unbiased truth from the witnesses. Although none of the individuals in question here faced criminal prosecution, the

**3.** Appellant did not claim self-defense with respect to Mr. Pritchard, but rather, contended that he never touched him.

risk of subjecting oneself to such prosecution would, we conclude, provide the same incentive to invocation of Fifth Amendment rights or fabrication of testimony as that perceived in *Harley*.

■ In light of the foregoing, we deem it unnecessary to reach the merits of appellant's other assignments of error.[4]

The judgment of sentence is reversed, and the case is remanded to the trial court for a new trial.

Jurisdiction is relinquished.

4. Each of appellant's remaining claims has either been waived or lacks merit. Nonetheless, had appellant properly preserved, by timely objection at trial, his challenge to the prosecutor's presentation to the jury of a knife in no way connected with appellant, we would similarly have found reversible error there.