**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAMUEL KEMP | : | |
| | : | |
| Appellant | : | No. 873 EDA 2016 |

Appeal from the Judgment of Sentence February 1, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013505-2014

BEFORE:  OTT, SOLANO, and JENKINS, JJ.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 17, 2017**

Samuel Kemp appeals from the judgment of sentence imposed February 1, 2016, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Kemp to an aggregate term of nine to 18 years' imprisonment, plus nine years' consecutive probation, following his non-jury conviction of aggravated assault,[1] driving under the influence of alcohol or controlled substance ("DUI") – combined impairment,[2] and related charges after he crashed his vehicle into the complainant who was standing behind his own disabled car.  On appeal, Kemp challenges both the sufficiency and weight of the evidence supporting his conviction of aggravated assault, and

_____

[1] **See** 18 Pa.C.S. § 2702.

[2] **See** 75 Pa.C.S. § 3802(d)(3).

the legality of his sentence on the charge of DUI-combined impairment. For the reasons below, we reverse the judgment of sentence for aggravated assault, vacate the sentence imposed for DUI-combined impairment, and remand for re-sentencing.

The facts underlying Kemp's arrest and conviction are summarized by the trial court as follows:

> On October 8, 2011, at approximately 4:10 p.m., [Kemp], driving while intoxicated and without a driver's license, crashed into Jabril Townsend's ("Complainant") vehicle at 3900 Aramingo Avenue, Philadelphia. On that day, the Complainant pulled his car over to the breakdown lane when it ran out of gas and reached into his trunk for a gas tank to refill it from the closest gas station. At that point, [the Complainant] heard a screeching noise and was immediately hit by [Kemp's] car. [Kemp] admitted to hitting [the Complainant] because he was intoxicated with drugs and fell asleep behind the wheel. On that day, [Kemp] and a female friend consumed Xanax and other pills before driving to purchase some more drugs. [Kemp] testified that he did not see the Complainant and did not stop the car. After the Complainant was struck, he was half conscious and recalled lying on the ground, pinned between the cars, with excruciating pain. He recalled feeling a burning sensation and seeing [Kemp] and his female friend in handcuffs. His now deceased girlfriend and a police officer accompanied him while the ambulance came. The extent of the Complainant's injuries was substantial. The Complainant was hospitalized for over five weeks and underwent eight surgeries, including receiving staples to his leg. He remained in the hospital for a couple months after the surgeries. The Complainant sustained emotional distress and cried while he struggled to use a wheelchair to receive physical therapy treatment for approximately five months. His leg is discolored and scarred, with multiple areas of visible open flesh. Further, he walks with a cane and can no longer play sports with his children or pick up heavy equipment at work.

> Officer Joseph Flynn received a radio call for an auto accident at that location on [October] 8, 2011. He testified that he saw the Complainant lying on the ground, being treated by

- 2 -

the medic boards. [Kemp's] Jeep Cherokee was directly behind the Complainant's car. He immediately notified the Accident Investigation Division ("AID") due to the severity of the Complainant's injuries. [Kemp] told Officer Flynn that he was the person who operated the vehicle and that his brakes failed. Officer Flynn testified that he did not observe any bleeding on [Kemp] nor a right turn signal or hazard lights on [Kemp's] vehicle. Officer Gary Harrison responded to the scene as an AID officer. He testified that he noticed that "[Kemp's] eyes were watering, staring, he was stuporous, incoherent, and when he spoke to [him], his speech was slurred. And when [he] saw [Kemp] walking, he was swaying and he was sagging as well." Officer Harrison administered the Standard Field Sobriety Test and [Kemp] failed the "walk and turn" test. [Kemp] also admitted to consuming Xanax, Seroquel, and Lithium. Based upon all of Officer Harrison's observation[s], he determined that [Kemp] was incapable of safely operating a motor vehicle. Officer Jamanda Smith also testified that when she saw [Kemp] at the AID headquarters, [Kemp] was drowsy and responded slowly.

Counsels stipulated that Dr. Cone's[3] drug scan report indicates that [Kemp] ha[d] Cocaine, Oxycodone, and Morphine in his system. The drugs were taken in close time proximity to one another [and] in significant dosage amounts. Dr. Cone concluded to a reasonable degree of certainty that [Kemp] was impaired by psycho active oxycodone and morphine, which was aggravated by the cocaine and that he was unfit to operate a vehicle on the highway. Counsels also stipulated that [Kemp's] car pushed the Complainant's car several feet before the vehicle came to a final rest. [Kemp's] car sustained damages to the front of the vehicle with a missing grill and headlights. The front bumper was dented with white paint transfer and both airbags were deployed. The rear of Complainant's car sustained damages to the bumpers and right rear taillight. The rear window was shattered and the trunk was crushed, while the right rear quarter panel was crushed inwards.

Trial Court Opinion, 4/20/2016, at 2-5 (record citations omitted).

_____

[3] Dr. Cone's first name is not revealed in the trial transcript.

Kemp was subsequently arrested and charged with the following offenses: aggravated assault, possessing an instrument of crime ("PIC"), simple assault, recklessly endangering another person ("REAP") (two counts), conspiracy, criminal mischief, aggravated assault by vehicle while DUI ("aggravated assault-DUI"), accidents involving death/injury, DUI – general impairment, DUI – controlled substances (three counts), driving without a license, and driving while operating privilege is suspended.[4] The case proceeded to a nonjury trial, and on November 6, 2015, the trial court found Kemp guilty of all charges, save for conspiracy, criminal mischief and driving while operating privilege is revoked, of which crimes he was acquitted.[5] Prior to sentencing, on January 14, 2016, Kemp filed a *pro se* motion requesting new counsel. The court did not consider the motion before sentencing. Rather, on February 1, 2016, the trial court sentenced Kemp as follows: (1) a term of nine to 18 years' imprisonment, plus two years' probation for aggravated assault; (2) a consecutive term of seven years' probation for aggravated assault by DUI; and (3) a concurrent term of

---

[4] *See* 18 Pa.C.S. §§ 2702, 907, 2701, 2705, 903(c), and 3304(a)(2), and 75 Pa.C.S. §§ 3735.1(a), 3742.1, 3802(a)(1) and (d)(1)-(3), 1501(a), and 1543(a), respectively.

[5] The significant delay in the trial appears to have been a result of Kemp's mental health issues. The record indicates he was committed to a mental health facility on several occasions during the four-year period following his arrest and before trial.

90 days to five years' imprisonment for DUI-combined impairment.[6] With regard to the remaining counts, the court determined they either merged for sentencing purposes or warranted no further punishment.

Thereafter, on February 4, 2016, the trial court granted Kemp's motion for the appointment of new counsel, and extended the time period for filing a post-sentence motion. On February 9, 2016, new counsel filed a post-sentence motion challenging the sufficiency and weight of the evidence, as well as the discretionary aspects of Kemp's sentence. The court denied the motion on February 19, 2016, and this timely appeal followed.[7]

In his first issue on appeal, Kemp challenges the sufficiency of the evidence supporting his conviction of aggravated assault.[8]

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [fact finder's] beyond a reasonable doubt. **Commonwealth v. Murray**, [623] Pa. [506], 83 A.3d 137, 150–51 (2013). Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. **Id.** at 151.

---

[6] **See** 75 Pa.C.S. § 3802(d)(3).

[7] On March 21, 2016, the trial court ordered Kemp to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Kemp complied with the court's directive, and filed a concise statement on April 8, 2016.

[8] We note Kemp does not challenge his conviction of aggravated assault-DUI.

- 5 -

*Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014), *cert. denied*, 135 S.Ct. 1400 (U.S. 2015).

Aggravated assault is defined in the Crimes Code, in relevant part as follows:

A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1).

In the context of motor vehicle accidents, and particular those resulting from a defendant's alcohol or drug impairment, the courts of this Commonwealth have wrestled with the determination of whether the impaired defendant possessed the sufficient *mens rea* to support a conviction of aggravated assault. *Compare Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa. 1995); *Commonwealth v. Comer*, 716 A.2d 593 (Pa. 1998); *Commonwealth v. McHale*, 858 A.2d 1209 (Pa. Super. 2004); and *Commonwealth v. Dellavecchia*, 725 A.2d 186 (Pa. Super. 1998) (*en banc*), *with Commonwealth v. Packer*, 146 A.3d 1281 (Pa. Super. 2016), *appeal granted*, ___ A.3d ___ (Pa. 2016); *Commonwealth v. Miller*, 955 A.2d 419 (Pa. Super. 2008); and *Commonwealth v. Kling*, 731 A.2d 145 (Pa. Super. 1999), *appeal denied*, 745 A.2d 1219 (Pa. 1999).

The common thread in the case law, first announced in *O'Hanlon*, is that the recklessness required for an aggravated assault conviction is a

"higher degree of culpability" than mere recklessness. *O'Hanlon*, *supra*, 653 A.2d at 618. The *O'Hanlon* Court explained:

> [T]he offensive act must be performed under circumstances which almost assure that injury or death will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury. Examples of such behavior make the distinction clear. In *Commonwealth v. Daniels,* 467 Pa. 35, 354 A.2d 538 (1976), appellant had fired a gun into a crowd; in *Commonwealth v. Laing,* 310 Pa.Super. 105, 456 A.2d 204 (1983), appellant drove his car into a crowd, after having aimed it at an individual; in [*Commonwealth v.*] *Scofield*, [521 A.2d 40 (Pa. Super. 1987), *appeal denied*, 535 A.2d 82 (Pa. 1987),] the appellant drove at a pedestrian. *See also, Commonwealth v. Hlatky,* 426 Pa.Super. 66, 626 A.2d 575 (1993); *Commonwealth v. Rohach,* 344 Pa.Super. 229, 496 A.2d 768 (1985). In each of these instances, the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions. In each case, the consequence was ignored.

*Id.* The Court further stated aggravated assault is "the functional equivalent of murder in which, for some reason, death fails to occur." *Id.*

The Supreme Court repeated this standard in *Comer*, *supra*, explaining the requisite state of mind is "equivalent to that which seeks to cause injury." *Comer*, *supra*, 716 A.2d at 596. A panel of this Court went one step further in *Kling*, *supra*. In that case, in which the defendant was convicted of both third degree murder and aggravated assault following a vehicle crash, the panel stated the *mens rea* for both crimes involves malice.[9] *Kling*, *supra*, 731 A.2d at 147. The panel observed: "In view of

---

[9] The *Kling* Court defined malice as follows:
*(Footnote Continued Next Page)*

this heightened *mens rea,* motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder or aggravated assault." *Id.* at 148.

With this background in mind, we proceed to consideration of Kemp's argument on appeal. Kemp does not dispute the complainant suffered serious bodily injury as a result of his negligent actions. *See* Kemp's Brief at 22. Rather, Kemp argues the evidence presented by the Commonwealth was "insufficient to establish the element of recklessness necessary to establish the crime of aggravated assault as set forth in [Section] 2702(a)(1)." *Id.* at 25. He further states: "Simply put, the factual record in the case *sub judice* is lacking in both the quantity and the quality of facts necessary to support a finding beyond a reasonable doubt that [] Kemp acted with malice." *Id.* at 30. For the reasons below, we are constrained to agree.

_____

*(Footnote Continued)* _____

> Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury.

*Kling*, *supra*, 731 A.2d at 147–148 (quotations omitted).

The trial court found the following evidence demonstrated that Kemp "exhibited extreme indifference to the value of human life"[10] when he struck the complainant with his motor vehicle: (1) Kemp "ingested drugs before he went on the highway to purchase more drugs with a female friend[;]" (2) Kemp drove "knowing that he was incapable of operating the vehicle" and stated as much to his friend; (3) Kemp "testified that he eventually fell asleep behind the wheels and did not hit the brakes when his car came into contact with the Complainant[;]" (4) the responding police officer described Kemp as "incoherent, spoke with a slurred speech, swayed and swaged, while his eyes were watering and staring[;]" and (5) Kemp's vehicle was "moving at a high rate of speed" as evidenced by the 42-foot skid mark prior to impact, as well as the severe damage to both vehicles. Trial Court Opinion, 4/20/2016, at 7-9. The court further summarized the following:

> The evidence of [Kemp's] actions leading up [to] the car accident, along with the officers' testimony of [their] observations of [Kemp] and Dr. Cone's report that [Kemp] ingested a significant amount of drugs before operating his car to purchase more drugs, indicates that [Kemp] was in the state of mind of not caring whether death or serious bodily injury would ensue to another person.

*Id.* at 9.

However, our review of the relevant case law leads to a different result. As noted above, this Court has found that "motor vehicle crashes

_____

[10] Trial Court Opinion, 4/20/2016, at 7.

seldom give rise to proof of the malice needed to sustain a conviction for …
aggravated assault." *Kling*, *supra*, 731 A.2d at 148. In both of the
leading decisions of the Pennsylvania Supreme Court, *O'Hanlon* and
*Comer*, the Court determined the evidence presented by the Commonwealth
was insufficient to support a conviction for aggravated assault.

First, in *O'Hanlon*, the Court found that the defendant's actions in
running a red light, when driving while inebriated, did not support the *mens
rea* for a conviction of aggravated assault. *O'Hanlon*, *supra*, 653 A.2d at
618 (stating "[s]erendipity, not intention, placed the victim in his path when
he drove through the red light.").

Second, in *Comer* the facts presented were even more egregious. In
that case, the defendant drank beer and took "downers" at a party before
driving his car on Roosevelt Boulevard in Northeast Philadelphia. *Comer*,
*supra*, 716 A.2d at 595. One eyewitness estimated the defendant was
travelling in excess of 70 m.p.h. *See id.* The defendant's right tire rubbed
the curb before the car left the road and hit two pedestrians waiting at a bus
stand, before finally coming to a stop when it struck a brick wall. *See id.*

In concluding the evidence was insufficient to support the *mens rea*
required for aggravated assault, the *Comer* Court distinguished the Superior
Court's decision in *Commonwealth v. Scofield*, 521 A.2d 40 (Pa. Super.
1987), *appeal denied*, 535 A.2d (Pa. 1987). In *Scofield*, the defendant
repeatedly scraped his car against parked vehicles, causing sparks to fly,
drove ten more feet before striking a pedestrian, and was belligerent and

tried to flee when a witness attempted to stop him and while the victim was still under his car. *See Scofield*, *supra*, 521 A.2d at 41.[11] The **Comer** Court explained: "In contrast, [here the defendant] sped past another vehicle, his car rubbed the curb of the sidewalk and the accident ensued immediately thereafter." *Comer*, *supra*, 716 A.2d at 597. Accordingly, the Court concluded the Commonwealth failed to "establish that [defendant] possessed the state of mind equivalent to that which seeks to cause injury." *Id.* at 596. *See also McHale*, *supra*, 858 A.2d at 1216-1217 (finding evidence insufficient to establish *mens rea* for aggravated assault when intoxicated defendant, without license or insurance, got in his vehicle after leaving bar, revved the engine, sped out of the parking lot, and hit a parked car and two pedestrians before fleeing the scene); *Dellavecchia*, *supra*, 725 A.2d at 189 (finding evidence insufficient to establish *mens rea* for aggravated assault when intoxicated defendant drove "at an excessive rate over congested city streets, weaving in and out of traffic, prior to crash," and did apply brakes "in an effort to avoid impact.").

---

[11] We note the **Scofield** panel also found the defendant's ingestion of alcohol and/or drugs before driving "alone was an act of intentional recklessness," a finding that was later rejected by the Supreme Court in **O'Hanlon**. *Scofield*, *supra*, 521 A.2d at 43; *O'Hanlon*, *supra*, 653 A.2d at 618 n.5 (rejecting the Dissent's adoption of "the conclusion of the Superior Court in **Scofield** that driving while in a state of voluntary intoxication is recklessness per se.").

We now turn to the cases relied upon by the trial court, in which this Court has found the evidence sufficient to support a conviction of aggravated assault resulting from a motor vehicle accident, have included evidence of the defendant's prior knowledge and conscious disregard of the risk associated with his reckless driving. *See Kling*, *supra*; *Commonwealth v. Miller*, 955 A.2d 419 (Pa. Super. 2008).[12]

In *Kling*, *supra*, the defendant was racing at speeds in excess of 75 m.p.h. for two and one-half miles on a curvy mountain road, and disregarded five cautionary signs and a near-miss collision before the crash. *Kling*, *supra*, 731 A.2d at 150. In distinguishing *Comer*, *supra*, the *Kling* panel explained:

> Unlike *Comer*, the crash here did not ensue immediately after the driver became aware of his life-threatening conduct. To the contrary, [the defendant] had **adequate time to calculate and reflect** upon the consequences of his reckless conduct, thus rendering the choice to continue it malicious.

*Kling*, *supra*, 731 A2d at 150 (emphasis supplied).

---

[12] While the trial court also relies upon *Commonwealth v. Nicotra*, 625 A.2d 1259 (Pa. Super. 1993), we note the sufficiency issue on appeal in that case concerned whether the Commonwealth proved beyond a reasonable doubt that the defendant's "intoxication and reckless driving **caused** the traffic accident on which the charged were based." *Id.* at 1260 (emphasis supplied). In addressing that claim, the panel focused on the charges of homicide by vehicle and homicide by vehicle-DUI. *See id.* at 1263. The panel did not address the claim raised herein, that is, whether the defendant possessed the sufficient *mens rea* to support his conviction of aggravated assault. Accordingly, we find *Nicotra* is factually distinguishable in our review of the issue *sub judice*.

In **_Miller_**, **_supra_**, a police officer heard screeching tires and observed the defendant "fishtailing out of control" before motioning the driver to pull over. **_Miller_**, **_supra_** 955 A.2d at 420. Although the intoxicated defendant initially stopped his car, he then "'gunned' the engine … and fled the scene at a high rate of speed" as the officer was about to approach. **_Id._** The defendant never slowed down as he drove through a traffic light and stop sign before colliding with two vehicles. **_See id._** at 421. He then ran from the scene and hid while his car erupted into flames. **_See id._** In holding the evidence was sufficient to support an aggravated assault conviction, the **_Miller_** panel summarized:

> The fact that [defendant] was under the influence of marijuana while driving at a high rate of speed, ignored traffic signals, "fishtailed" around corners, disregarded the requests of a police officer to pull over, and accelerated through the intersection just before the crash all combine to prove the malicious nature of his actions.

**_Miller_**, **_supra_**, 955 A.2d at 423.

Although not cited by the trial court, this Court's recent decision in **_Commonwealth v. Packer_**, 146 A.3d 1281 (Pa. Super. 2016),[13] is also

_____

[13] We note the Commonwealth sought allowance of appeal from this decision in the Pennsylvania Supreme Court. The Court granted the petition on December 5, 2016, on the following issue, as stated by the Commonwealth:

> Did the prosecution prove beyond a reasonable doubt that Ms. Packer acted with sufficient malice when she became involved in a fatal motor vehicle accident after she "huffed" Dust-Off to support her convictions for [t]hird [d]egree [m]urder and [a]ggravated [a]ssault?

_(Footnote Continued Next Page)_

instructive. In that case, the defendant and her fiancé "huffed" aerosol dust remover while sitting in her car parked in a Walmart lot. *Id.* at 1283. Before driving away, the defendant asked her fiancé, "Do you trust me?" to which he replied, "Am I going to die tonight?" *Id.* The defendant then drove to a nearby convenience store, and "huffed" again while stopped at a red light. *Id.* Approximately five minutes after leaving the store parking lot, and while in a "zombielike state," the defendant drove her car into the incoming lane of traffic, narrowly missing one vehicle before striking the victim's vehicle head on and killing the victim. *Id.* at 1284. The defendant remained at the scene and called 911, but later lied to police regarding the cause of the accident. *See id.* She also claimed to have used the aerosol duster to clean the vehicle's air vents. *See id.* At trial, the defendant's fiancé testified that they had "huffed" before that night on several occasions, and the defendant admitted in her statement to police that she had "blacked out" in the past after "huffing." *Id.*

In finding the evidence was sufficient to support the defendant's convictions of third-degree murder and aggravated assault, the panel focused on the defendant's admitted "awareness of her impaired condition and the harm she might cause." *Id.* at 1286. Specifically, the panel noted

*(Footnote Continued)* ――――――――――

***Commonwealth v. Packer***, ___ A.3d ___, 533 MAL 2016 (Pa. 2016). Accordingly, it appears the Supreme Court will once again consider the degree of recklessness required to convict an impaired driver of aggravated assault.

the defendant asked her fiancé if he trusted her after she "huffed" the dust remover, but before she drove out of the parking lot. *See id.* Moreover, the panel emphasized that the defendant admitted to police she was aware of the effect "huffing" had on her, and she acknowledged she had "blacked out" after "huffing" on prior occasions. *Id.* The panel opined:

> We believe there is a qualitative difference between knowingly driving while impaired and **knowingly driving when one is aware of a strong likelihood of becoming unconscious.** While impairment denotes a diminished capacity for proper functioning, unconsciousness renders a person incapable of functioning, thereby ensuring a person has no opportunity to avoid a collision, and virtually guaranteeing some manner of accident.

> Accordingly, when Packer drove her vehicle immediately after "huffing" at least three times, knowing the likelihood that she could black out and become unconscious, she "disregarded an unjustified and extremely high risk" that her actions "might cause death or serious bodily injury." *Kling, supra.* Therefore, the evidence presented to the jury was sufficient to prove she displayed the malice needed to support the conviction of third degree murder.

*Id.* (emphasis supplied).

Upon our review of the present matter, we find the facts in this case more closely align with those in *Comer*, *McHale* and *Dellavecchia*, than those in *Kling*, *Miller*, and *Packer*. First, the evidence demonstrated there was very little time between Kemp's acknowledged awareness of his impaired condition and the accident. Kemp admitted he took drugs before getting behind the wheel of a car. *See* N.T., 11/6/2015, at 43. He testified that as he was proceeding on the exit ramp from Interstate 95 at Aramingo Avenue, he realized he could not operate the car due to the effects of the

drugs. *See id.* at 44. He explained that just a "couple of minutes before" the accident, he told his friend:

> I said I cannot operate the vehicle. I was try[ing] to put on the hazards and then I turned the signal on to make a right turn off of Aramingo, and then I stopped the car with the break. And then I tried to look for the hazards and then I rolled again, and then I stopped again, and then two or three seconds later, [the complainant] was on the highway.

*Id.* at 44-45. Therefore, according to Kemp, the accident occurred very shortly after he became aware of his impaired condition.[14] We note that unlike in *Kling* and *Miller*, Kemp did not disregard repeated warnings to stop or slow down. *See Kling*, *supra*, 731 A.2d at 150 (defendant ignored five cautionary signs and a near-miss collision); *Miller*, *supra*, 955 A.2d at 420 (defendant first acknowledged, and then ignored police officer's signal to stop). Nor did he acknowledge a past history of "blacking out" when he took similar drugs, or make a statement, prior to getting behind the wheel, indicating he knew he might be too impaired to drive, as did the defendant in *Packer*. *See Packer*, *supra*, 146 A.3d at 1283, 1284 (defendant asked

---

[14] The Commonwealth asserts we are precluded from considering any defense evidence when reviewing Kemp's sufficiency claim, and, in particular, Kemp's own testimony in which he disputed he acted with malice. *See* Commonwealth's Brief at 8-9. However, the Commonwealth also encourages us to consider Kemp's testimony that he was aware of his impairment **before** the accident. *See id.* at 9. As we will discuss *infra*, our ruling herein does not hinge on Kemp's testimony concerning his state of mind. Rather, we find the facts and circumstances surrounding the accident insufficient to support a finding of malice.

passenger "Do you trust me?" after "huffing" behind the wheel, and admitted she had "blacked out" from "huffing" in the past).

Moreover, here, unlike in **Miller** or **Packer**, the evidence demonstrates Kemp attempted to brake before striking the complainant. Indeed, the complainant testified he heard a "screeching noise" immediately before he was hit, and the parties stipulated that there was "about 42 feet of skid mark" from Kemp's vehicle prior to impact.[15]  N.T., 11/6/2015, at 10, 32.  **Compare with Miller**, **supra**, 955 A.2d at 423 (finding the evidence demonstrated the defendant "accelerated through the intersection just before the crash"); **Packer**, **supra**, 146 A.3d at 1286 (finding the evidence demonstrated the defendant "took no evasive action prior to impact, rather she drove directly into [the victim] after narrowly missing the car in front of him.").

Therefore, while it is evident Kemp was too impaired by drugs to safely operate a vehicle, we conclude the evidence does not support a finding that Kemp acted with malice or sought to "cause injury."  **Comer**, **supra**, 716 A.2d at 596; **Kling**, **supra**, 731 A.3d at 147.  As a panel of this Court observed in **McHale**:

---

[15] We note Kemp's testimony on this issue was conflicting.  Indeed, when asked if he "ever hit the [brake]" before impact, Kemp relied, "No, [] my foot was lightly on the propeller at the time."  N.T., 11/6/2015, at 47. However, according to the responding police officers, Kemp told them that he tried to apply the brakes before the accident, but the brakes failed.  **See id.** at 22, 27.

There is no doubt that drunk driving is reprehensible. Statutes have been enacted to punish this offense and offenders should be prosecuted accordingly. However, here, the Commonwealth seeks to blur the lines of criminal liability based upon negligence, ordinary recklessness and the form of recklessness encompassed in malice, that reflects "extreme indifference to the value of human life," in order to create a sort of malice *per se* from the act of driving while under the influence. If focusing merely on the tragic consequences of these actions, there is a tremendous temptation to allow the "book" to be thrown at such offenders. However, we cannot let our contempt for this irresponsible behavior and compassion for the victims involved supplant the legal standards upheld as part of a centuries-old common law tradition and enacted by our legislature.

**McHale**, **supra**, 858 A.2d at 1218. Accordingly, we reverse Kemp's conviction for aggravated assault, and remand for resentencing.[16]

Kemp also asserts his sentence for DUI-combined impairment should have merged with his sentence for aggravated assault-DUI. Both the trial court and the Commonwealth agree, as do we.

Preliminarily, we note a claim that convictions should have merged for sentencing purposes implicates the legality of sentencing. **See Commonwealth v. Tanner**, 61 A.3d 1043, 1046 (Pa. Super. 2013). "Consequently, our standard of review is *de novo* and the scope of our review is plenary." **Id.** (quotation omitted).

Convictions merge for sentencing purposes if two criteria are met: "the crimes arise from a single criminal act and all of the statutory elements

_____

[16] Because we conclude the evidence was insufficient to support the aggravated assault conviction, we need not address Kemp's second claim that the verdict was against the weight of the evidence.

of one offense are included in the statutory elements of the other offense."

42 Pa.C.S. § 9765. With regard to the specific convictions at issue, this Court has held that all of the statutory elements of the crime of DUI are subsumed within the statutory elements of the crime of aggravated assault-DUI. *See Tanner*, *supra*, 61 A.3d at 1047 (comparing 75 Pa.C.S. §§ 3802(c) and 3735.1(a)).[17] Accordingly, where, as here, the crimes arise from a single criminal act, they merge for sentencing purposes. *See id.* Consequently, we vacate the sentence imposed on Kemp's conviction of DUI-combined impairment.

Because we conclude (1) the evidence was insufficient to support Kemp's conviction of aggravated assault, and (2) the sentence imposed on his conviction of DUI-combined impairment should have merged for sentencing purposes, we vacate the sentence imposed by the trial court and remand for re-sentencing. *See Commonwealth v. Laudadio*, 938 A.2d

_____

[17] For purposes of a merger analysis, we detect no difference between the subsection of the DUI statute at issue in *Tanner*, Section 3802(c), and the subsection at issue herein, Section 3802(d)(3). The *Tanner* Court explained the crime of aggravated assault-DUI required, as an essential element, "that an individual caused the proscribed harm 'as a result of' violating the DUI statute and that the individual be convicted of DUI." *Tanner*, *supra*, 61 A.3d at 1047. *See also* 75 Pa.C.S. § 3731.1(a) ("Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 … and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury."). Accordingly, for purposes of an aggravated assault-DUI conviction, the specific subsection of the DUI statute charged is immaterial.

1055, 1056 (Pa. Super. 2007) (remanding case for re-sentencing when vacation of conviction "may disturb the trial court's overall sentencing scheme.").

Judgment of sentence vacated. Case remanded for resentencing in accordance with this Memorandum. Jurisdiction relinquished.

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2017